## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, ▇▇▇▇▇▇▇▇, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn according to the law, hereby state that the facts set forth in this affidavit are true and correct to the best of my knowledge, information, and belief:

### INTRODUCTION AND AGENT BACKROUND

1. Your Affiant, ▇▇▇▇▇▇▇▇, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice, with the meaning of Title 18, United States code, Section 3051, and is an officer of the United States empowered by law with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States.

2. Your Affiant's primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking laws and conspiracy laws. Prior to graduating from the Federal Law Enforcement Training Center in 2020 and becoming an ATF Special Agent, Your Affiant was employed with Ernst and Young for over four (4) years, working as a Senior Forensic Accountant in Ernst and Young's Forensic Accounting practice. While employed as an ATF Special Agent, Your Affiant has conducted and participated in numerous federal investigations. Your Affiant has participated in the execution of numerous federal and state search warrants involving violent crime, organized crime, illegal firearms possession, firearms trafficking, the use and trafficking of narcotics, and armed narcotics trafficking. Your Affiant is familiar with federal criminal laws pertaining to firearms and drug violations.

3. Your Affiant works with other law enforcement officers with decades of experience

enforcing federal firearms laws, and Your Affiant benefits from their knowledge. Your Affiant investigates violations of federal firearms laws and federal narcotics laws in the normal course of his duties and is familiar with the facts of this case.

4. The statements contained in this affidavit are based, in part, on information provided by Special Agents and Task Force Officers of the ATF and other law enforcement officers; on conversations held with police officers; and on Your Affiant's background and experience as a Special Agent of the ATF. Your Affiant has not included every fact known to Your Affiant concerning this investigation. Your Affiant has set forth only the facts that Your Affiant believes are necessary to establish the required foundation for an order authorizing the arrest of Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez.

**AFFIDAVIT PURPOSE**

5. This affidavit is submitted to support a criminal complaint and application for arrest warrants for and against Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez.

6. Your Affiant submits that between on or about March 6, 2025, and on or about March 10, 2025, in the State and District of Colorado, the defendants, Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez, committed violations of 18 U.S.C. § 933(a)(1) and (a)(3), and 21 U.S.C. § 841(a)(1) and 846, as follows:

   a. March 6 through March 10, 2025: attempt and conspiracy to illegally traffic firearms (Villalobos-Salas, Guevara-Muro, Delgado-Perez)

   b. March 6, 2025: distribution of a schedule III controlled substance (ketamine) (Villalobos-Salas, Guevara-Muro, Delgado-Perez);

   c. March 6, 2025: distribution of a schedule II controlled substance (cocaine) (Villalobos-Salas);

2

   d. March 6 through March 10, 2025: conspiracy to distribute a schedule III controlled substance (ketamine) (Villalobos-Salas, Guevara-Muro, Delgado-Perez)

  7. Because this affidavit is submitted only to obtain a criminal complaint and arrest warrant, I have set forth only those facts I believe are necessary to establish probable cause for the above-mentioned offenses.

  8. The facts in this affidavit come from my personal observations, interviews, police reports, body camera footage, jail calls, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

## INVESTIGATION

  9. The United States, including the ATF, is conducting a criminal investigation of Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez, and both identified and unidentified co-conspirators regarding possible violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 933(a)(1) and (a)(3) (hereinafter "the Subject Offenses").

  10. In October of 2024, the ATF began an investigation into armed narcotics and firearms trafficking activities occurring in the Denver, CO area, stemming from information obtained from the Arapahoe County Sheriff's Office. A Confidential Informant ("CI") was directed by Your Affiant to frequent an apartment complex that had an increase in violent crime and drug activities in the Denver metro area and obtain information relating to individual(s) engaged in criminal activity. The CI has been given monetary compensation in exchange for giving law enforcement reliable information on criminal activities on dozens of prior occasions, and no information provided by the CI has subsequently proven false. He/she is not trying to reduce any sentence in exchange for his/her

3

cooperation. The CI has past felony convictions, but none within the last 9 years, and none involving falsehoods or deception.

11.  According to the CI, he/she met an individual identified as L. A. P. on or about October 9, 2024, in the area of a Conoco gas station, located at 2280 S Quebec St, Denver, CO 80231. During the initial interaction, L. A. P. discussed with the CI that L. A. P. was from Venezuela and has numerous associates in the Denver and Aurora areas who are also from Venezuela. Over the course of the next several weeks, the CI and L. A. P. engaged in recorded communications in which L. A. P. purported to be involved in firearms trafficking activities with his criminal associates.

12.  Between October 9, 2024, and February 27, 2025, ATF undercover agents (UCs) conducted numerous undercover meetings with suspects in this investigation. During these undercover meetings, UCs purchased a variety of items of evidentiary value to include firearms, ammunition, firearms parts and accessories, suspected cocaine, and tusi (a narcotic that is known on the street to contain a mixture of ketamine, methamphetamine, cocaine, MDMA, LSD, and other common street level narcotics). The undercover meetings discussed below are only those with relevance specifically as it pertains to the criminal activities of Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez.

### *Undercover Purchase – March 6, 2025*

13.  Between February 27, 2025, and March 6, 2025, at the direction of the ATF, the CI engaged in conversation with L. A. P. regarding purchasing multiple firearms from L. A. P. and his criminal associates.

14.  On March 6, 2025, L. A. P. met with ATF UCs in Denver, CO, with four previously unidentified Hispanic males (who were subsequently identified as E. V. M., Delgado-Perez, Guevara-Muro, and Villalobos-Salas). During the initial portion of the undercover meeting, E. V. M.

4

produced two firearms, specifically a Glock, model 43X, 9mm pistol, bearing serial number AHPC567 with a magazine loaded with ten (10) rounds of 9mm ammunition, and a Kahr Arms, model PM40, .40 caliber pistol bearing serial number WA2632, with a magazine loaded with five (5) rounds of .40 caliber ammunition, to sell to the UCs. The UCs purchased the firearms for $2,200 in in pre-recorded buy money/U.S. currency.

15. After the initial interactions during the same undercover meeting, the suspects left and returned to the undercover meeting with the UCs. At the direction of Guevara-Muro, E. V. M. produced two additional firearms, specifically, a Walther, model PPS, .40 caliber pistol bearing serial number AH2815, with a magazine loaded with seven (7) rounds of .40 caliber ammunition, and a Glock, model 31GEN4, .357 caliber pistol bearing serial number CBYE983, with a magazine. The UCs paid E. V. M. $2,700 in pre-recorded buy money/U.S. currency for the purchase of the firearms and ammunition. During this undercover interaction, the UCs and CI advised the suspects that the UCs were purchasing the firearms to transport the firearms to Mexico and sell the firearms for profit to individuals in Mexico.  This discussion took place during the purchase of the Walther and Glock above, and before that transaction had been completed.

16. During the same undercover interaction on March 6, 2025, in the presence of the UCs, Guevara-Muro manufactured approximately 51 grams of tusi containing suspected methamphetamine, LSD, and ketamine, to sell to the UCs. During the manufacturing process, Guevara-Muro, in the presence of Delgado-Perez and Villalobos-Salas, purported to the UCs that this specific batch of tusi would include methamphetamine, LSD, and ketamine, along with other known mixtures of powdery substances. The UCs paid Guevara-Muro $2,700 in pre-recorded buy money/U.S. currency for the purchase of approximately 51 grams of freshly manufactured tusi. The UCs also purchased ½ ounce (15 grams) of suspected cocaine for $650 from Villalobos-Salas and an

5

additional unidentified individual. During the undercover interaction, E. V. M., Guevara-Muro, Villalobos-Salas, and Delgado-Perez were physically present and all materially assisted with the manufacturing process of the tusi, as observed by the UCs.

17. Preliminary laboratory testing indicates that the 15 grams of suspected cocaine is indeed cocaine, a schedule II substance. Laboratory testing on the tusi is still pending. However, the substances used to manufacture the tusi, based on my training and experience, were visually consistent with the appearance of the illegal substances the defendants purported them to be.

18. In total, the UCs purchased 4 firearms, approximately 51 grams of tusi, a controlled substance containing a suspected mixture of methamphetamine, MDMA, cocaine, LSD, and ketamine, and approximately 15 grams of suspected cocaine.

### *Communication after Undercover Purchase on March 6, 2025*

19. After the controlled purchase on March 6, 2025, the CI had recorded communications with each of the newly identified suspects from the March 6, 2025, undercover meeting. The CI had recorded communications with E. V. M. During the conversations, E. V. M. advised that he had associates in Chicago, IL that could sell firearms and narcotics to the CI's associates. E. V. M. also stated that he had access to females for sex trafficking in the Chicago, IL area. E. V. M. sent several pictures of Hispanic females to the CI who were available for sex trafficking activities.

20. After the controlled purchase on March 6, 2025, the CI engaged in recorded conversations with Villalobos-Salas. During the phone call and text messages, Villalobos-Salas sent pictures of Hispanic females who were available for sex trafficking activities. Villalobos-Salas also discussed selling firearms to the CI's associates and sent pictures of firearms to the CI that were available for purchase.

21.     On March 7, 2025, the CI had a recorded phone call with Delgado-Perez, about Delgado-Perez having criminal associates in the Chicago, IL, area that had firearms for sale. During this phone call, Guevera-Muro also engaged in conversation with the CI and Delgado-Perez. Guevera-Muro discussed being able to source tusi for the CI's associates in the Chicago, IL area.

22.     Shortly after the conversation with Delgado-Perez and Guevara-Muro on March 7, 2025, Guevara-Muro then contacted the CI and engaged in recorded conversations with the CI about selling firearms and tusi to the CI's associates in the Chicago, IL area. Guevara-Muro also discussed selling firearms to the CI's associates. After the conversation with Delgado-Perez and Guevara-Muro on March 7, 2025, Guevara-Muro then contacted the CI and engaged in recorded conversations with the CI about selling firearms and tusi to the CI's associates in Chicago, IL.

## *Arrest of Suspects in Nebraska*

23.     On March 9, 2025, Guevara-Muro, Villalobos-Salas, and Delgado-Perez, advised the CI that they would drive to Chicago, IL the following day to conduct a sale involving multiple firearms and tusi. On March, 10, Guevara-Muro, Villalobos-Salas, and Delgado-Perez were driving from Denver, CO, to Chicago, IL, as previously advised, and were stopped in Hall County, Nebraska.  After the vehicle stop was initiated by a Nebraska State Patrol (NSP) Trooper, the Trooper made contact with the vehicle. Upon contact with the vehicle, the NSP Trooper detected the odor of marijuana emitting from the vehicle.  He asked the driver, later identified as Guevera-Muro, to step out of the vehicle and sit in the passenger seat of the patrol unit.  The NSP Trooper asked the driver where he was coming from and where he was going, to which the driver replied "from Denver to Chicago." There were four people in the vehicle, so the NSP Trooper requested additional NSP units. Additional NSP resources arrived on scene and held the other occupants while a probable cause search of the vehicle was conducted.

24. During the probable cause search, an NSP Trooper located a black backpack containing a hollowed-out book with 12 colored pills and a white powdery substance in a small plastic bag. The NSP Trooper then had a tow truck called for the vehicle so a more thorough search could be conducted at the State Patrol office in Grand Island, NE. An NSP Trooper transported the driver and the female front passenger to the office for further questioning by a Spanish speaking NSP Trooper for interpreting. An NSP Trooper transported the other two passengers from the backseat, later identified as Delgado-Perez and Villalobos-Salas. While at the State Patrol office, 46 grams of Ketamine were located in the black and green backpack, which Guevara-Muro admitted was his along with 12 ecstasy pills, a scale, and small baggies. Additionally, other items of evidentiary value, to include food coloring and fruit flavored oils, appeared to be the same items that ATF UCs observed to be used for the manufacturing of tusi on March 6, 2025, by Guevara-Muro, Villalobos-Salas, and Delgado-Perez.

25. An NSP Trooper also located approximately 1 g of marijuana that was handed to him by P. C. During interviews Guevara-Muro admitted to the pills being ecstasy and stated that he got the white powder at a natural remedies shop. Guevara-Muro was cited for possession of controlled substance x2, possession with intent to deliver, possession of drug paraphernalia, no operators license, and no proof of insurance. P. C. was cited for possession of controlled substance, possession with intent to deliver, possession of marijuana less than an ounce, possession of drug paraphernalia, and littering. Delgado-Perez and Villalobos-Salas were cited for possession of controlled substance and possession with intent to deliver. All four were transported to Hall County jail where they were booked and lodged.

## *NIBIN Intelligence*

26. All of the firearms described above, except those firearms that contain no make, no model, or no serial numbers, were preliminarily examined by ATF SA ▬▬▬▬, who has acquired knowledge and experience relating to firearms and ammunition and specifically the interstate nexus determination of firearms and ammunition through training, investigations, extensive research and review of records, as well as conferring with other experts and contacts within the firearms industry. Based on ▬▬▬▬ preliminary examinations, all the firearms described above, except those firearms that contain no make, no model, or no serial numbers, are firearms as defined in Title 18 U.S.C., Chapter 44, Section 921(a)(3), and that these firearms were not manufactured in the State of Colorado, and therefore traveled in and/or affected interstate and/or foreign commerce prior to being recovered as part of this investigation.

27. The firearms discussed above that were either purchased by the UCs or recovered subsequent to the arrest of the individuals referenced above were placed into ATF evidence. After the firearms were entered into evidence, they were test fired, and the spent shell casings from the test fires were entered into the National Integrated Ballistic Information Network (NIBIN) database for criminal intelligence purposes. The firearms discussed above have functioned as designed and meet the definition of a "firearm" as defined in 26 U.S.C. § 5845(a)(6). After the spent shell casings were entered into the NIBIN database, several of the firearms referenced above were determined to match spent shell casings from several crime scenes.

28. As discussed previously, the ATF purchased a Glock, 43X, 9mm pistol, bearing serial number AHPC567, which was purchased on March 6, 2025. After the test fired casings from this firearm were entered into the NIBIN database, it was determined the test fired shell casings matched spent shell casings recovered from seven (7) shooting incidents from August 2024 to October 2024,

9

with no victims or witness reported.

29.   As discussed previously, the ATF purchased a Kahr Arms AO, PM40, .40 caliber pistol, bearing serial number WA2632, which was purchased on March 6, 2025. After the test fired casings from this firearm were entered into the NIBIN database, it was determined the test fired shell casings matched spent shell casings recovered from three (3) shooting incidents. In October 2023, casings were recovered from a male shooting from his car. In April 2024, casings were recovered from an assault where a group of Hispanic males assaulted a victim. Shell casings matched spent shell casings recovered from a shots fired that occurred in December of 2024 where a large group exchanged gunfire with each other.

## **CONCLUSION**

30.   Based on the aforementioned information, Your Affiant submits that probable cause exists that on or about March 6, 2025, through March 10, 2025, in the State and District of Colorado, the defendants, Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez, committed violations of 21 U.S.C. § 841(a)(1) and 846, and trafficked in firearms, in violation of 18 U.S.C. § 933(a)(1) and (a)(3). Specifically:

- Attempt and conspiracy to illegally traffic firearms:
    - Guevara-Muro was giving directives to E. V. M. during the second firearm transaction on March 6, 2025. That transaction involved discussions about the UCs' plans to illegally traffic the firearms to Mexico, and the transaction was completed after all the defendants understood those plans. Further, in the days following, during communications with E. V. M., Villalobos-Salas, Delgado-Perez, and Guevara-Muro, separately and sometimes in each other's presence, each of those defendants made plans for additional firearms sales to the UCs and the UCs' associates, knowing that the UCs had stated they intended to illegally traffic the firearms to Mexico. Those communications included specific plans and photographs of guns.

- Distribution of illegal narcotics and conspiracy to distribute narcotics
    - Guevara-Muro, Delgado-Perez, Villalobos-Salas, and E. V. M. all participated in manufacturing and distributing the tusi on March 6, 2025. During the manufacturing, the defendants represented that methamphetamine, LSD, and ketamine were being

mixed into the finished drug. According to the training and experience of the UC, the substances used in the manufacturing process were visually consistent with the drugs the defendants said they were using. Further, the negotiations involved plans for follow-on drug deals, and the defendants continued communicating with the UCs after this deal, both of which would make little sense if the defendants were intending to sell fake narcotics to the UCs. Combined with subsequent events where the defendants were stopped with ketamine, there is probable cause they distributed at least ketamine, a schedule III drug.

- Additionally, beginning on March 7, 2025, Guevara-Muro and Delgado-Perez made plans with the CI to distribute tusi to the CI's associates in Chicago, and on March 9, Guevara-Muro, Villalobos-Salas, and Delgado perez told the CI they were leaving to Chicago the following day to distribute tusi to the CI's associates. On March 10, 2025, all three were stopped in Nebraska by police, and found in the possession of ketamine. Accordingly there is probable cause that they conspired with one another to distribute ketamine, a schedule III controlled substance.

- Further, the substance distributed by Villalobos-Salas on March 6, 2025, tested positive for cocaine.

31. As such, Your Affiant respectfully requests that the Court issue a criminal complaint and a corresponding arrest warrant for and against Jhon Villalobos-Salas, Lenguinyer Guevara-Muro, and Randy Moises Delgado-Perez.

32. I, ███████████, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, hereby depose and state that the above-mentioned information is true to the best of my information, knowledge and belief.

/s/ ███████████
ATF Special Agent

**Affidavit reviewed and submitted by Garreth Winstead, Assistant United States Attorney.**

Sworn to and subscribed before me this 9th day of April, 2025.



CYRUS Y. CHUNG
United States Magistrate Judge
District of Colorado

11